# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOSHUA DONAHUE ET AL          CIVIL ACTION

VERSUS          NO: 16-13948

REPUBLIC NATIONAL DISTRIBUTING          SECTION: "H"(1)
COMPANY, LLC ET AL

## ORDER AND REASONS

Before the Court are Defendant Darana Hybrid, Inc.'s Motion for
Summary Judgment (Doc. 107) and Defendant W&H Systems, Inc.'s Motion
for Summary Judgment (Doc. 109). For the following reasons, the Motions are
GRANTED.

## BACKGROUND

This action arises from injuries that Plaintiff Joshua Donahue suffered
while working in the facility of Defendant Republic National Distribution Co.
("RNDC"). RNDC contracted with Defendant W&H Systems, Inc. ("W&H
Systems") to install a conveyor system in its warehouse. W&H Systems
contracted with Defendant Darana Hybrid, Inc. ("Darana") to perform

electrical work as part of that installation. Darana had an outstanding contract with Defendant American ManPower Services, Inc. ("AMPS") in which AMPS provided labor to Darana. Plaintiff worked for AMPS, and under the contract with Darana, was assigned to Darana's electrical project for W&H Systems. On July 29, 2015, while descending a scaffold in RNDC's facility, Plaintiff was struck in the head by the blades of an unguarded overhead fan.

Plaintiff filed this suit on June 8, 2016, in Civil District Court for the Parish of Orleans asserting claims for negligence and premises liability. Defendants removed the action to this Court on August 18, 2016. On May 8, 2018, Darana filed this Motion for Summary Judgment asserting immunity as Plaintiff's statutory employer.[1] W&H Systems has also filed a Motion for Summary Judgment asserting immunity as Plaintiff's statutory employer.[2] Plaintiff opposes both motions.

Pending before this Court are motions for summary judgment by defendants Darana and W&H Systems.

## LEGAL STANDARD

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

---

[1] Doc. 107.
[2] Doc. 109.
[3] FED. R. CIV. P. 56 (2012).
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[8] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## LAW AND ANALYSIS

The Louisiana Worker's Compensation Law ("LCWL") provides the exclusive remedy against employers for employees injured in the course and scope of their employment.[11] The resulting immunity from tort liability extends

---

[5] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[8] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[11] LA. REV. STAT. § 23:1032.

to principals that contract with another entity to perform part of the principal's work, in which case the principal is known as a "statutory employer."[12] A statutory employer relationship exists when the work is part of the principal's "trade, business, or occupation," that is, "if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services."[13]

The statute further provides:

(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer.[14]

The statute, then, provides for two ways by which a principal may become a statutory employer.[15] The first is, under § 1061(A)(2), "being a principal in the middle of two contracts."[16] This is referred to as the "two-contract theory." The second is, under § 1061(A)(3), procuring work with a written contract expressly

---

[12] *See id.* § 23:1061.

[13] *Id.*

[14] *Id.*

[15] *See* Dean v. Southmark Const., 879 So. 2d 112, 120 (La. 2004) (Victory, J., dissenting); Cummins v. R.A.H. Homes, LLC, 2018 WL 2057301, at *3 (La. App. 3 Cir. May 2, 2018); Fee v. Pineville Forest Prod., Inc., 233 So. 3d 649, 652–53 (La. App. 1 Cir. 2017); *see also* Groover v. Scottsdale Ins. Co., 586 F.3d 1012, 1015 (5th Cir. 2009) (omitting, however, the requirement that a contract under the second theory explicitly name the principal as a statutory employer).

[16] *Cummins*, 2018 WL 2057301, at *3.

recognizing the principal as a statutory employer.[17] "The determination of statutory employer status is a question of law for the court to decide."[18]

## I. Darana's Motion for Summary Judgment

Defendant Darana asserts immunity under the two-contract theory. The party claiming immunity bears the burden of proof.[19] Darana, therefore, must show that, 1) Darana contracted to execute work for a third party, 2) that work was "a part of [Darana's] trade, business, or occupation," 3) Darana contracted with an immediate employer "for the execution by or under the [immediate employer] of the whole or any part of the work undertaken by [Darana]," and 4) "the services or work provided by the immediate employer [were] contemplated by or included in a contract between" Darana and anyone other than the immediate employer.[20]

### a. Darana Contracted to Work for a Third Party

W&H Systems contracted with Darana for the installation and testing of electrical wiring for a conveyor system at RNDC. Darana submits a document styled as a purchase order from May 15, 2015 from W&H Systems.[21] The document requests materials and labor from Darana for the completion of electrical wiring and testing of the conveyor system pursuant to a W&H Systems bid and wiring specification. It also states a price. The corporate representative of Darana testified that the purchase order represents the parties' entire agreement and that there was no later agreement.[22]

In response, Plaintiff points to invoices against the purchase order that Darana sent to W&H Systems, including the one covering the period of time in

---

[17] LA. REV. STAT. § 23:1061(A)(3).
[18] Louque v. Scott Equip. Co., LLC, 212 So. 3d 1203, 1209 (La. App. 5 Cir. 2017).
[19] Grant v. Sneed, 155 So. 3d 61, 69 (La. App. 2 Cir. 2014).
[20] See LA. REV. STAT. § 23:1061.
[21] Doc. 107-3.
[22] Doc. 141-9 at 1–12.

which Plaintiff was injured, that reference an agreement dated June 25, 2015, rather than May 15, 2015.[23] Darana's corporate representative testified that the reference to June 25 was a clerical error and that all references should have been to May 15.[24] Plaintiff argues that this discrepancy creates a dispute of material fact as to whether there was a June 25, 2015 contract between Darana and W&H Systems, precluding summary judgment. Plaintiff, however, presents no evidence contradicting the clerical error explanation and, more importantly, no evidence to suggest that a June 25 agreement would differ from the May 15 agreement in any way that is material to Defendant's Motion. The bare assertion that Defendant is lying or mistaken is insufficient to create an issue of material fact. Therefore, the first element is met.

### b. The Work Was Part of Darana's Business

There is no dispute that the work in question was a part of Darana's business. The second element is met.

### c. Darana Contracted with Plaintiff's Immediate Employer for Work undertaken by Darana

Darana argues that its contract with AMPS, Plaintiff's immediate employer, satisfies the third element. At the outset, the Court notes that the uncontradicted evidence reveals Darana has a symbiotic relationship with AMPS. The same individual owns both companies. Darana, a licensed electrical contractor, has no direct employees, and the sole work it performs is the installation and wiring of conveyor systems. Darana bids all jobs and invoices all work, while AMPS provides all the people—laborers, electrical workers, and management—who perform the work.

---

[23] *See* Docs. 141-6, 141-7, 141-8.
[24] Doc. 141-9 at 22–23.

Darana submits a copy of a general agreement setting forth the broad terms under which AMPS may provide Darana with labor.[25] The agreement does not contain any specifics about the particular tasks for which the labor is to be provided, but rather contemplates additional written requests with specific details for any projects. Darana does not submit any document pertaining to the provision of labor for the RNDC project specifically or electrical work generally. Plaintiff does not dispute that he performed electrical work on the conveyor system in the RNDC warehouse, that AMPS assigned him that task, and that AMPS paid him for the work.[26] Darana submits an affidavit from an AMPS foreman who states that Plaintiff performed electrical work on the conveyor system pursuant to the contract between AMPS and Darana. Plaintiff submits no evidence contradicting that assertion. There is no dispute, then, that Plaintiff, pursuant to the contract between AMPS and Darana, performed electrical work for Darana on the W&H Systems job, satisfying this element.

Plaintiff argues that Defendant Darana cannot take advantage of the two-contract theory because any contract that Darana had with AMPS is absolutely null under Louisiana Civil Code article 7 for violating Jefferson Parish ordinances that require companies doing electrical work to possess a license.[27] Nevertheless, Plaintiff acknowledges that Darana possessed the appropriate license. Still, Plaintiff maintains that because AMPS did not possess such a license, and because no Darana employee directly supervised the work, the contract between AMPS and Darana violates the parish

---

[25] Doc. 36-2.

[26] Doc. 141-1 at 1.

[27] LA. CIV. CODE art. 7 ("Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity."). *See also* JEFFERSON PARISH CODE OF ORDINANCES §§ 8-5-115.3.1; 8-5-115.3.1.1.

ordinances. Here, the material fact is that the party undertaking to perform electrical work, Darana, was licensed. The contract between Darana and AMPS required AMPS to ensure that any employees provided to Darana were properly certified for the work requested by Darana.[28] Even if Darana then violated the ordinances by using unlicensed labor or inadequately supervising that labor, such a violation in the performance of the contract does not render the contract itself null.

### d. The Work Provided by AMPS was Contemplated by the Contract Between Darana and W&H Systems

With respect to the fourth element, Darana argues that its contract with W&H Systems is a contract with a party other than the immediate employer, AMPS, that contemplates the work or services provided by AMPS. Plaintiff argues that Darana's contract with W&H Systems does not contemplate the subject of the AMPS contract because the subject of the AMPS contract was temporary labor. In support, Plaintiff relies on *LFI Fort Pierce, Inc. v. Acme Steel Buildings, Inc.*[29]

In *LFI*, the defendant performed work on a building pursuant to a thin purchase order from a third party that identified items like "Furnish and Install Complete Metal Building System" and stated a price for each item.[30] The defendant then subcontracted with a temporary employment service to supplement its workforce.[31] The subcontract did not identify the specific work for which the third party had hired the defendant. Instead, it only noted the

---

[28] *See* Docs. 36-2 at 1, 141-14.
[29] LFI Fort Pierce, Inc. v. Acme Steel Buildings, Inc., 200 So. 3d 939, 947 (La. App. 3 Cir. 2016).
[30] *Id.* at 947.
[31] *Id.*

immediate employer's status as a temporary employment service that hires its own employees and assigns them to various jobs.[32]

The court reasoned that because the two-contract defense only applies when the primary contract contemplates or includes the services or work provided by the immediate employer, the primary contract would have had to contemplate the provision of temporary labor as referenced in the subcontract. The court held that there was an issue of material fact as to whether the thin purchase order did so, even though it was undisputed that the third party knew the defendant would need to procure temporary labor.

Here, the facts are different. It is true that, as in *LFI*, the subcontract between Darana and AMPS did not specifically refer to the exact tasks W&H Systems contracted with Darana to perform. But the key distinguishing factor is that Darana was not merely supplementing its workforce with AMPS employees; AMPS provided, and always provides, Darana's *entire* workforce. The only way Darana can perform any services whatsoever is by hiring "temporary" workers. And the only company from which it hires workers is AMPS. Here, Darana actually contracted with AMPS for labor before it entered into the primary contract with W&H Systems. Thus, the only way Darana could comply with its obligations under the primary contract was by relying on its "temporary" workforce that was already being supplied by AMPS. It is hard to imagine how the primary contract could not contemplate the use of temporary workers as referred to in the subcontract when there was, in fact, no other way the primary contract could have been performed.

Plaintiff does not dispute that he performed electrical work on the conveyor system in the RNDC warehouse, that AMPS assigned him that task,

---

[32] *Id.*

and that AMPS paid him for the work.[33] Darana submits an affidavit from an AMPS foreman who states that Plaintiff performed electrical work on the conveyor system pursuant to the contract between AMPS and Darana. Plaintiff submits no evidence contradicting that assertion. There is no question of fact about whether the service AMPS provided was electrical work or at the very least the availability of electricians. Electrical work on the conveyor system is the very subject of Darana's contract with W&H Systems, and AMPS employees are the only people who do that type of work for Darana.

There is no question of fact that the services provided by AMPS—i.e. Plaintiff's electrical work—were contemplated by Darana's contract with a third party, W&H Systems. Thus, Darana meets every element necessary to establish immunity under the two-contract theory. Accordingly, Defendant Darana's Motion is granted. Defendant Darana is Plaintiff's statutory employer, and Plaintiff's claims against Darana are dismissed.

## II.   W&H Systems' Motion for Summary Judgment

W&H Systems also asserts the two-contract theory of statutory employment. The two-contract theory extends to cover principals that subcontract with another statutory employer.[34] W&H Systems submits evidence that it contracted with RNDC to install the conveyor system and that it contracted with Darana for part of the electrical work required to complete that installation. Plaintiff argues that some documents referenced in the RNDC contract have not been produced but points to no specific reason to

---

[33] Doc. 141-1 at 1.

[34] *See* LA. REV. STAT. § 23:1061 ("[W]hen any 'principal' undertakes to execute any work . . . and contracts with any person, in this Section referred to as the 'contractor', for the execution by *or under* the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 . . . ." (emphasis added)); Berard v. The Lemoine Co., LLC, 169 So. 3d 839, 846 (La. App. 3 Cir. 2015).

believe that such documents would change the nature of the contract between W&H Systems and RNDC. Therefore there is no dispute of material fact as to any of the elements of statutory employer immunity for Defendant W&H Systems, and summary judgment is granted that W&H Systems is Plaintiff's statutory employer.

Plaintiff argues that W&H Systems' immunity under the LWCL does not extend to W&H Systems' allegedly negligent failure to supervise the entity that installed the scaffolding because Plaintiff is not part of the contractual chain between W&H Systems and the scaffolding installer. A statutory employer "shall be granted the exclusive remedy protections of R.S. 23:1032."[35] Revised Statutes § 23:1032 states that when the LWCL provides a remedy, it is "exclusive of all other rights, remedies, and claims for damages . . . as against [an employee's] employer . . . for said injury."[36] The LWCL provides a remedy to an employee for "personal injury by accident arising out of and in the course of his employment."[37] The statutes, therefore, extend immunity to all claims against a statutory employer for personal injury by accident arising out of and in the course of an employee's employment. There is no requirement that the cause of the injury be related to the nature of the work that the employee was performing, as long as the employee was injured while in the course and scope of his employment. Plaintiff cites to no authority stating otherwise. Plaintiff does not dispute that he was injured in the course and scope of his employment, therefore W&H Systems is immune under the LWCL from all of Plaintiff's claims. Accordingly, Defendant W&H Systems' Motion is granted. Plaintiff's claims against W&H Systems are dismissed.

---

[35] LA. REV. STAT. § 23:1061.
[36] Id. § 23:1032.
[37] Id. § 23:1031.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions are GRANTED. Plaintiffs' claims against Darana and W&H Systems are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 30th day of August, 2018.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**