UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA DONAHUE ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-13948** |
| **REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC ET AL.** | **SECTION: "H"(1)** |

### ORDER AND REASONS

Before the Court is Defendant Republic National Distributing Company, LLC's Motion for Summary Judgment (Doc. 212). For the following reasons, Defendant's Motion is **DENIED**.

### BACKGROUND

This action arises from injuries that Plaintiff Joshua Donahue suffered while working in the facility of Defendant Republic National Distribution Company, LLC ("Republic"). Republic distributes alcohol products. To replace an outdated conveyor system in its warehouse in Jefferson Parish, Louisiana, Republic contracted with Defendant W&H Systems, Inc. ("W&H Systems") to install a new conveyor in the warehouse. W&H Systems then contracted with

Defendant Darana Hybrid, Inc. ("Darana") to perform electrical work as part of that installation. At the time, Darana had an outstanding contract with Defendant American ManPower Services, Inc. ("AMPS") whereby AMPS provided labor to Darana. Plaintiff worked for AMPS and under the contract with Darana was assigned to Darana's electrical project for W&H Systems at the Republic facility. On July 29, 2015, while descending a scaffold in Republic's facility, Plaintiff was struck in the head by the blades of an unguarded overhead fan.

Plaintiff filed this suit on June 8, 2016, in Civil District Court for the Parish of Orleans asserting claims for negligence and premises liability. Defendants removed the action to this Court on August 18, 2016.

On September 21, 2018, Defendant Republic filed a Motion for Summary Judgment asserting immunity from Plaintiff's tort claims under the Louisiana Worker's Compensation Law.[1] Specifically, Republic argues it enjoys immunity from tort liability as Plaintiff's "statutory employer."[2] Plaintiff opposes.[3]

This Court previously recognized Defendants W&H Systems and Darana as Plaintiff's statutory employers and accordingly granted Motions for Summary Judgment in their favor.[4] The Court heard oral argument on Defendant Republic's Motion for Summary Judgment on October 24, 2018.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows

---

[1] *See* Doc. 212-1.
[2] *See id.*
[3] *See* Doc. 223.
[4] Doc. 207.

2

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[7] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[8] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[9] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[10] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[12]

---

[5] FED. R. CIV. P. 56 (2012).
[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[7] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[8] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[9] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[10] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[11] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[12] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

The Louisiana Worker's Compensation Law ("LWCL") provides employers immunity from tort liability for injuries their employees suffer in the course and scope of employment.[13] When an employer enters into a contract with a "principal" to perform the principal's work, and the principal qualifies as a "statutory employer" under the LWCL, tort immunity extends to the principal.[14]

In this case, Defendant Republic argues that it enjoys immunity from Plaintiff's tort claims against it because it is a statutory employer of Plaintiff. Plaintiff responds first that Republic is not a "principal" as defined in the LWCL, and that even if it is, Republic still does not qualify as Plaintiff's statutory employer. This Court assumes for purposes of argument that Republic qualifies as a principal under the LWCL.[15] Even so, Republic fails to qualify as a statutory employer under Louisiana law.

Louisiana Revised Statute § 23:1061 establishes the requirements that a principal must meet to qualify as a statutory employer.[16] Although the statute is relatively lengthy, it cannot be properly interpreted without reference to each subsection in the statute. As such, this Court reproduces the entire text of the statute here.

The statute provides:

(1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this

---

[13] LA. REV. STAT. § 23:1032.
[14] *See id.* § 23:1061; *see also id.* § 23:1032(A)(2) (defining "principal" as used in § 1061).
[15] *But see* Beaver v. Exxon Mobil Corp., 361 F. Supp. 2d 565, 569 (M.D. La. 2005) (holding under similar circumstances that the relevant party was not a "principal" as defined in the statute and thus did not qualify as a statutory employer).
[16] LA. REV. STAT. § 23:1061.

4

> Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
>
> (2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.
>
> (3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer.[17]

The statute, then, clearly provides that a statutory employer relationship "shall not exist" unless one of two situations arise: either (1) "there is a written contract . . . which recognizes the principal as a statutory employer;" or (2) "whenever the services or work provided by the immediate employer is

---

[17] *Id.*

5

contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer."[18]

In this case, Republic does not argue that any written contract exists between it and anyone else that expressly recognizes it as a statutory employer of Plaintiff. Therefore, Republic can only qualify as a statutory employer under § 1061(A)(2), which is commonly referred to as the "two-contract" defense.[19]

## I. The Two-Contract Defense Does Not Apply to Republic

"The 'two-contract' defense applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed."[20] Republic argues that it meets the first element because it is a principal that contracted with suppliers of alcohol products to distribute those products to vendors throughout Louisiana.[21] It argues that it meets the second element because for it to honor its obligations to those suppliers, Republic needed to install a new conveyor system.[22] And finally, Republic argues that it meets the third element because it entered into a subcontract with W&H Systems to install the conveyor system.[23]

Republic, however, overstates the scope of the two-contract defense. Under Republic's interpretation of the defense, virtually *all* businesses would qualify as statutory employers. But the defense has never been interpreted so broadly. As stated by Louisiana's Fifth Circuit Court of Appeal in a case cited

---

[18] *See id.*
[19] *See* Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Auth., 842 So. 2d 373, 379 (La. 2003) (explaining when the "two-contract" theory applies).
[20] *Id.*
[21] *See* Doc. 234 at 4.
[22] *See id.*
[23] *See id.*

6

to by Defendant Republic, "the purpose behind the two contract theory is to establish a compensation obligation on the part of the principal who contractually obligates itself to a party *for the performance of work* and who then subcontracts with intermediaries whose employees perform *any part of that work*."[24] Republic argues that the relevant "work" it contracted for with a third party was the distribution of alcohol products. It further argues that Plaintiff's work installing the new conveyor system in Republic's warehouse represented "part of that work." This Court refuses to adopt such a broad definition of the word "work." Plaintiff's employer was not hired to help distribute alcohol products. It was hired to do electrical work on a conveyor system.[25] The two jobs are not so related as to form part of the same "work" for statutory employer purposes.

Republic cites to the Louisiana Supreme Court's decision in *Allen* to support its contention that the two-contract defense applies here.[26] In that case, a convention center contracted with a catering company to provide services for events at the convention center, and then the convention center contracted with a hardware company to host an event at the center.[27] An employee of the catering company injured herself while doing work for the hardware company's trade show, and the Court held that the convention center was the injured employee's statutory employer.[28] Thus, the employee injured herself performing obligations that the convention center had directly bound itself to perform to the hardware company.[29] Here, however, Plaintiff injured

---

[24] Orillion v. Alton Ochsner Med. Found., 685 So. 2d 329, 333 (La. App. 5 Cir. 1996) (emphasis added).
[25] *See* Doc. 212-1 at 2.
[26] *See* Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Auth., 842 So. 2d 373 (La. 2003).
[27] *See id.* at 375.
[28] *See id.* at 375, 383.
[29] *See id.* at 375.

himself not while distributing alcohol products—the service that Republic obligated itself to perform to third parties—but while doing electric work on a conveyer system. Even if it is true that the work being performed by Plaintiff would help Defendant Republic better perform its obligations to third parties, the jobs are not sufficiently similar to warrant application of the two-contract defense.

Republic also cites to the Louisiana Fifth Circuit Court of Appeal's decision in *Orillion v. Alton Ochsner Medical Foundation* to support its position.[30] In *Orillion*, a hospital hired a general contractor to construct a new building, and the general contractor subcontracted with another company to perform masonry services for the project.[31] An employee of the masonry company injured himself during the project and sued, among other defendants, the hospital, which sought to avoid liability on statutory employer grounds.[32] The court of appeal ultimately affirmed the trial court's ruling that the hospital was the plaintiff's statutory employer.[33]

For several reasons, this Court does not find *Orillion* persuasive. First, because the opinion does not specifically address *how* the hospital qualified as a statutory employer, the opinion lacks explicit reasoning to support Defendant Republic's argument.[34] Second, and perhaps most importantly, *Orillion* was decided in 1996, the year before the Louisiana Legislature amended the LWCL in a way that materially changed how employers could qualify as statutory

---

[30] *See Orillion*, 685 So. 2d at 329.
[31] *Id.* at 331.
[32] *See id.* at 330–31.
[33] *See id.* at 330–33.
[34] *See id. See also Beaver*, 361 F. Supp. 2d at 569 ("The holding in *Orillion*, as it pertains to [the hospital], is questionable at best."); *Orillion*, 685 So. 2d 329, 332–33 (J. Gothard, dissenting) ("[T]he two contract rule does not apply to [the hospital] because [the hospital] is one step removed from the contract between the general contractor and the subcontractor.").

8

employers.[35] For the reasons explained below, the change in the law rendered opinions published before 1997 about statutory employer issues largely irrelevant to post-1997 interpretations of the statute.

## II. The "Trade, Business, or Occupation" Defense Was Eliminated by the 1997 Amendment to the LWCL

Defendant Republic argues that even if it is not Plaintiff's statutory employer under the two-contract defense, it nonetheless qualifies as Plaintiff's statutory employer under the "trade, business, or occupation" defense.[36] Such a defense, however, does not exist under current Louisiana law.

Prior to 1997, Louisiana Revised Statute § 23:1061 provided:

> (A) Where any person, in this Section referred to as "principal", undertakes to execute any work, *which is a part of his trade, business, or occupation or which he had contracted to perform*, and contracts with any person, in this Section referred to as "contractor", *for the execution by or under the contractor of the whole or any part of the work undertaken by the principal*, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.

---

[35] *See* 1997 La. Sess. Law Serv. Act 315 (S.B. 922) (West).
[36] *See* Docs. 212-1 at 8–11, 234 at 4–6.

9

(B) Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.[37]

Thus, at least between 1989 and 1997, any "principal" was a statutory employer of employees of "contractors" that performed part of the principal's "trade, business, or occupation."[38] But that changed in 1997 when the Legislature again amended § 23:1061.[39] Ever since that amendment, the statute has provided that a "statutory employer relationship shall *not* exist" unless either the two-contract defense applies or a contract specifically refers to a principal as a statutory employer.[40] Thus, although § 23:1061(A)(1) retains much of the statute's pre-amendment language, providing that a statutory employer relationship does not arise unless a principal contracts for work that is part of the principal's trade, business, or occupation, Section (A)(1) of the statute is now subject to the limitations provided by Sections (A)(2) and (A)(3).[41] A contract involving work for a principal's trade, business, or occupation is therefore a *necessary* but not *sufficient* element of a

---

[37] 1989 La. Sess. Law Serv. Act 454 (H.B. 1431) (West) (emphasis added).
[38] *See id. See also* Kirkland v. Riverwood Int'l USA, Inc., 681 So. 2d 329, 331–337 (La. 1996) (discussing the history of the statute).
[39] *See* 1997 La. Sess. Law Serv. Act 315 (S.B. 922) (West). In fact, the Legislature's amendment specifically overruled previous Louisiana Supreme Court decisions interpreting the scope of the trade, business, or occupation defense. *Id.* ("The provisions of this Act are intended to legislatively overrule the statutory employer tests as stated in the Louisiana Supreme Court decisions [*Berry v. Holston Well Service*, 488 So. 2d 934 (La. 1986)] and [*Kirkland v. Riverwood Int'l USA, Inc.*, 681 So. 2d 329 (La. 1996)]."). In *Kirkland*, the court had noted that the previous version of § 23:1061 was "silent as to the standard to be applied for determining statutory employer status." *Kirkland*, 681 So. 2d at 335.
[40] *See* LA. REV. STAT. § 23:1061(A)(2)–(A)(3) (emphasis added).
[41] *See id.* § 23:1061.

statutory employer relationship. As such, this Court does not find persuasive *post*-1997 cases cited to by Defendant Republic that rely on *pre*-1997 cases in holding that the trade, business, or occupation defense applied after the 1997 amendment to the statute.[42]

Because the two-contract defense does not apply to Defendant Republic and the trade, business, or occupation defense no longer exists, Republic is not Plaintiff Donahue's statutory employer. Therefore, Republic is not immune from Plaintiff Donahue's tort claims under the LWCL, and it is thus not entitled to summary judgment on the issue of liability in this case.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED**.

New Orleans, Louisiana this 29th day of October, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[42] *See* Doc. 212-1 at 8–11; McCann v. Best Buy Co., No. 17-108, 2018 WL 3244999, at *4 n.2 (M.D. La. July 3, 2018) (citing Thomas v. State, Dep't of Transp. & Dev., 662 So. 2d 788, 792 (La. App. 2 Cir. 1995)); Lopez v. U.S. Sprint Communications Co., 973 So. 2d 819, 825 (La. App. 4 Cir. 2007) (citing *Thomas*, 662 So. 2d at 792). *See also Thomas*, 662 So. 2d at 792 (citing Freeman v. Moss Well Service, Inc., 614 So. 2d 784, 786 (La. App. 2 Cir. 1993)).